## GEORGE M. RUSLING

*v.*

## CALVIN E. BRODHEAD et al.

A firm agreed to give R., for a valuable consideration, a fourth interest in the profits which it might make in a certain contract for work, R. to furnish necessary capital for such work up to a certain sum, *pro rata* with the firm. After performance thereof, one of the partners, a non-resident, died, and thereafter full payment for the work was made to the survivors.—*Held*, that R. could maintain a suit against the survivors alone, for an account of the profits, and a payment to him of a fourth part thereof, as R. did not, by his agreement, become a member of the firm, and the presence of the representatives of deceased was not indispensable to the ascertainment of the merits, or to prevent injustice to them, no representatives being appointed within the state, and foreign representatives not being subject to suit in their representative capacity outside of the state in which they were appointed.

*Mr. James P. Northrop* and *Mr. R. Floyd Clark* (of the New York bar), for the complainant.

*Mr. Richard V. Lindabury*, for the demurrants.

STEVENS, V. C.

It appears by the bill that, in June, 1894, Calvin E. Brodhead, Robert P. Brodhead and Daniel C. Hickey were copartners in business, and that as such they made the following agreement with complainant:

Rusling v. Brodhead.

"For and in consideration of the sum of one dollar ($1) in hand received, the receipt of which is hereby acknowledged, we, Brodhead & Hickey, hereby agree to and do hereby sell and assign to Geo. M. Rusling, his heirs or assigns, a one-fourth interest in any and all of the net profits which may arise for the doing of the work under any contract which we may or shall obtain and accept from the Hudson River Railroad and Terminal Company, or their successors or assigns, for the building of a tunnel through Bergen Hill, near Edgewater, New Jersey, and any other work pertaining or belonging thereto.

"And the said Geo. M. Rusling hereby agrees to furnish his proportion of the capital necessary for carrying on the said work, up to the sum of four thousand dollars ($4,000) for said proportion, *pro rata* with Brodhead & Hickey, as may be required.

"Executed this 23d day of June, 1892, in duplicate.

"BRODHEAD & HICKEY.
"G. M. RUSLING."

After this agreement was made, Brodhead & Hickey obtained the contract to which it related, and had completely performed it on or about July 1st, 1894. On July 12th, 1894, Hickey, one of the partners, died. He was, at the time of his death, a citizen of and resident in the State of New York. The bill alleges that no personal representatives of his estate have been appointed " within the jurisdiction of this court." It also alleges that on September 15th, 1894, " Brodhead & Hickey, as copartners, received  *  *  *  full payment for all work done under the contract."

The complainant prays, as against the surviving members of the firm, an account of profits and a decree for payment to him of one-fourth part of them. Both of the surviving partners demur, on the ground that the personal representatives of Daniel C. Hickey ought to be made parties.

As the foreign representatives of Hickey's estate are not liable to be sued in their representative capacity in the courts of this state (*Durie* v. *Blauvelt, 20 Vr. 114*), the complainant has not called upon them to answer, and has not prayed process against them. The question is whether they are, notwithstanding the complainant's inability to bring them into court, so indispensably necessary to the prosecution of the suit that no decree can be made against the surviving partners alone.

The agreement of June 23d, 1892, is somewhat peculiar. It

does not create an ordinary partnership between the parties, although it contains some of the elements of a partnership. It is not an agreement between A, B and C to share profits and bear losses, but an agreement by the firm of A & B, on the one hand, to give to C, on the other, for a certain consideration, one-fourth of the profits which that firm may make in a specified venture.

It does not provide that A shall become, even temporarily, a partner of this firm or of any new firm to be created *pro hac vice.* Its language is, in substance, this:

"We, the firm of Brodhead & Hickey, do sell and assign to Geo. M. Rusling a fourth interest in the net profits which may arise from the doing of any work under any contract which *we* [the firm of Brodhead & Hickey] shall obtain" &c.

There are these things to be noted in the agreement: It was intended—first, that the contract which the parties hoped to secure should be taken by the firm of Brodhead & Hickey alone; second, that Rusling should not have any right of control over or management of the firm's affairs, and third, that Rusling should furnish capital up to $4,000, *pro rata,* not with the individual members of the firm, but with the firm itself. The paper is signed only in the firm name.

The agreement is not unlike that which was before the court in *Hargrave* v. *Conroy, 4 C. E. Gr. 281,* and in *Walker* v. *Hirsch, 27 Ch. Div. 460,* cases in which it was held that no true partnership existed between the parties. Now, if the complainant was not a member of the firm of Brodhead & Hickey but one merely who by reason of his agreement had some claim upon it, even though that claim was of such a character that an account was necessary, there would seem to be no substantial objection to allowing him to proceed against the surviving partners just as any other claimant might do. According to a perfectly well-settled rule, on the death of a partner the surviving members are the proper persons to get in and pay its debts. *2 Lind. Part.* *591.* They alone sue and are sued in a court of law; they alone represent the partnership; they are presumably more

familiar with its affairs than anyone else. If they can protect the interests of the firm in a court of law, why can they not in a court of equity? It is, no doubt, true that in equity the representatives of a deceased partner are ordinarily deemed necessary parties, but the question here is whether they are, in cases situated as this is situated, so indispensably necessary that the case must fail if they be not present. I do not think they are. It is well settled that persons out of the jurisdiction need not be made parties unless their presence is indispensable to the ascertainment of the merits of the case, or unless their interests will be prejudiced by the decree. *Story Eq. Pl.* § *81 ; Dan. Ch. Pr. (6th ed.) \*150.* Judge Story thus states the rule in regard to partners :

"If one of the partners be resident in a foreign country so that he cannot be brought before the court, and the fact is so charged in the bill, the court will ordinarily proceed to make a decree against the partners who are within the jurisdiction, with this qualification, however, that it can be done without manifest injustice to the absent partner."

Tested by this rule, the personal representatives of Hickey may be dispensed with. Their presence is not necessary to the ascertainment of the merits of the case ; they had nothing to do with the making or performance of the contract, and, so far as appears, they were entire strangers to it. The surviving partners are fully capable of protecting the firm interests, and no injustice will be done to the estate of the deceased partner, because on a settlement of the affairs of Brodhead & Hickey either in court or out of it, the representatives of the Hickey estate, not having been parties to this suit and not being bound by the decree, will be at liberty to question any account the surviving partners may present to them and have it corrected if it should appear to be erroneous, just as they would be able to question any other act of the surviving partners done in the execution of their trust.

On the other hand, the refusal of the court to proceed would amount to a denial of justice. The complainant and one of the defendants reside here, and the work under the contract was performed here. To allow the demurrer would be to declare that

although the surviving partners have in hand the profits of the contract and are legally accountable for them to the complainant, yet that because certain other persons, who know nothing about the matter and who cannot be brought into court, are not present, the complainant is remediless. None of the cases cited by complainant go to this length. They are cases in which it was held either that the presence of those interested, but not made parties, was indispensably necessary to the ascertainment of the merits, or cases, like that of *Shields* v. *Barrow, 17 How.* (*U. S.*) *130,* in which manifest injustice would have been done to absent parties by a decree directly affecting their rights.

The demurrer should be overruled.